Lego Systems Inc. et al. v. Zuru Inc. Mr. Posner, you have two minutes to rebuttal, and you can begin whenever you're ready. Thank you. Good morning, and may it please the Court. I'm Dan Posner for the appellant, Zuru. Your Honors, the District Court misapplied this Circuit's Copyright and Trade Dress Law when it concluded in a summary one-sentence ruling that all ten of Zuru's redesigned third-generation figurines are subject to the preliminary injunction in this case so that Zuru is barred from selling them for the duration of this case. On de novo review under this Court's ruling in In Re Tronics, this Court has jurisdiction because the District Court modified the preliminary injunction by erroneously extending it to the ten third-generation figurines that are similar to the minifigure copies. I don't know I modified it. You didn't say that. The District Court, to be sure, did not say, but the import of the ruling is necessarily a modification because for him to have reached the conclusion that it did, he had to have applied this Court's substantial similarity and confusingly similar standards, which are legal standards, and had to have erroneously done so, because those are legal standards, and on this Court's interpret, these Court cases in Nihon and Silverman, they must be given their legal meanings in the injunction. But we're having to make a leap here, an inferential leap, just the point of one that you made. I mean, you know, based upon the outcome, we're going to make the leap that there was a, you know, on his part, a modification. And that's, that's, that's... Well... My question, I mean, why shouldn't, at the very least, why shouldn't we refer, remand it back to the District Court for reasons? Normally we get reasons from the District Court as to why a decision is reached. Normally we... The sum and substance of the District Court's reasoning is found at A536. It's three lines. Having announced my analysis with respect to copyright issues, my conclusion, I'll give you a written order, the proposed product would be in violation of the preliminary injunction. That's it. That's the, the sum and substance... I mean, this is, I'm sorry. I've only done this for 21 years. Judge Walker's a little senior to me and has done it a little longer. But I don't, I don't understand how remotely how we can understand what's going on in the District Court, in the District of Connecticut. We would, this case has been pending for six years. We've been under... The summary judgment motion has been pending for how long? Three years. Three years. We've been under a preliminary injunction for six years. I would submit that it's, that LEGO should not benefit from the lack of reasoning in the District Court's order. And I would argue why, if the District Court applied the standard that it must have applied based on the language in the preliminary injunction, it must have done so erroneously. And then that... You made the decision to make this argument as opposed to asking the District Court to supply reasons upon which then you could have based your appeal. Why? Maybe you're not going to be happy with what he says. Why don't we do it? We could look at the figurines, the legal standard. We could do just exactly what Judge Thompson was supposed to have done, or did, but didn't tell us why. And let me, let me ask you, what's the baseline? The baseline is the original figurine that was the premise of the original preliminary injunction, right? The baseline is the minifigure copyright, which is the premise of the original injunction. The question is whether the ten, all ten, redesigned third-generation figurines are substantially or confusingly similar to the minifigure copyright. And the issue that we raise, and we've beat this drum for quite a while now in the District Court, is that that question must be limited to the potentially protectable expressions of the minifigure copyright. The District Court has not made findings about what those protected expressions are, and LEGO. Why couldn't, why couldn't the comparison be, because obviously there was a hearing and there was a preliminary injunction, there was an appeal, then there was a contempt, why couldn't the baseline, if we were going to supply our own reasoning to the decision, be the difference between the second generation and the third generation? And I don't know, if it doesn't look a lot, you can try to explain to me what's different between the second generation and the third generation, but it doesn't seem to be much different to me. Well, I think that's not the baseline because that's not what the preliminary injunction says. It's not what the copyright's about. That's not. The question is the third generation. These are redesigned figurines that there's really no question we were authorized to propose six years into this case. Their similarity to the minifigure. Isn't the danger exactly that perhaps Judge Thompson did exactly what Judge Bianco was proposing in that? I mean, the protected figure is the figurine produced by Lego. Not the figurine that you produced that was then subject to the first generation or the second generation because you didn't appeal the second generation. My point was different. My point is whether there's a modification of the injunction. If a preliminary injunction is issued and it's fully litigated and you lose and your client, I'll just take the hypothetical, does something minuscule that nobody can even notice on the figurine and the district court says, my prior ruling applies to that figurine. That's certainly not a modification of the injunction. If we look at the figurine and say there's no different, there's nothing different about that figurine. Nothing. That's not a modification of judgment. Maybe someday you can make that argument on a final judgment, but that's not appealable then, right? Well, respectfully, that's not the situation here. No matter what happens, if we send it back, whatever reasoning the district court gives, you're going to be right back here and say that if you lose, that because we lost, we can immediately appeal this now because this is a modification of the injunction because we lost. I'm not sure we'll be right back here if this court provides guidance to the district court about the appropriate legal standard to apply to the similarity question, which is this court's more discerning ordinary observer test, the first step of which is to identify and filter out the unprotectable elements of the minifigure and then do the comparison based on what's left. This court has recognized that over and over again, going back to the Mattel case from the 1980s, which we cite, which involved toy dolls, which LEGO doesn't cite. On through the Zalewski case and so forth. And we've shown, and LEGO does not dispute and has never disputed, that when one identifies all those unprotectable elements, what they're left with is an exceedingly thin copyright that they've admitted in prior litigation protects only against identical figurines, nearly identical. Ours are not. In the context, it's an unusual context for copyrighted works, of these construction toy figurines that LEGO admits are perfectly functional. They fit perfectly in the system. Pull them apart. Move them attachment. We're allowed to do all of those functional features, the sizes and proportions of the figurines, because that's the only way that they fit. There's no dispute that following the expiration of LEGO's utility patents, we can do all that. And that's the reason why the changes that we've made might appear minuscule on first glance, among other reasons, because the figurines are only four centimeters tall, but they are material and significant. And there's little more we can do that could alter the design of our figurines without rendering them completely inoperable in the play system. I want to take you back to Judge Bianco's question, because I think it's very interesting. You, as to the second generation, you have not, you've lost the opportunity to contest that that's not a modification of the preliminary injunction. I'm a little unclear about the question. So the first and second generation figurines are subject to the earlier injunction. And now the question. So you can't make the argument that the second generation constituted a modification. Well, as a factual matter, we have an argument. We do. I mean, we might disagree with the district court. That's a legal matter. The second generation differed from the first. That's a legal matter. That's over. That's over. That's not the issue we're raising on this appeal. Right. This is the difference between the third and the second. And I would submit, if you look at the record here, we submitted a comprehensive expert declaration and explained it all. Just humor me. What's the difference between your second generation and your third generation? What's the difference? I would refer the court to the declaration of our expert, which is, I believe, at the confidential appendix 215. We've offered ten varieties. We've changed whatever potentially protectable features we can. LEGO doesn't identify them again, but one of them we've given them the benefit of saying, all right, fine. The potentially protectable feature is the very particularized expression of your trapezoidal-shaped torso. We have now made our torso about as non-trapezoidal as possible. The waist is very narrow. It fits only one stud, for example, to connect to the base plate. We've made the legs of our figurines more narrowed and tapered, in fact, so narrow that they don't accommodate any holes on the backs of their legs anymore for attachment to the LEGO play system in a seated position. We submit we've gone further than we could possibly be required to go by copyright or trade dress law, which does not protect functionality, but we have nevertheless made design changes to these third-generation figurines that impact and inhibit functionality and, frankly, inhibit our ability to compete against LEGO because we've made these design changes. We shouldn't have to. If you properly construe their copyright as being very thin in scope, as this Court's precedents require, the changes we've made are significant and material, and there's ten examples, so I'm not sure you want me to describe each of them, but we have changed them all in their potentially protectable expressions in a variety of different ways. We've tried as hard as we could to do that. I just want you to address one. There's a summary order that they cite significantly in their papers. DABO? Yeah. It's just from last year where we concluded, it was a summary order, but we concluded that a motion for clarification of a permanent injunction that sought a ruling whether a package design was or was not a violation of a permanent injunction was not appealable because it was not a modification of the injunction. As long as, in that case, we declined the invitation to hear that appeal, nothing in the record suggests the District Court's interpretation was unreasonable. So isn't that very similar to the situation? Well, that's the jurisdictional question. It was a summary ruling. The jurisdictional issue was not even briefed. Do you think that was wrong? Do you think that summary order was wrong? On the facts of that case, I don't think it was wrong, but what the Court does there, and all this Court's precedents require, including in retronics, is at least they look through the door into the merits of the case to get to the jurisdictional issue. In that case, a look through the door showed nothing in the record to show that the District Court got it wrong. In our case, LEGO doesn't even want the Court to take a peek through the door, but it is jumping off the face of the pleadings below and the record here that the District Court did not properly apply this Court's test for substantial and confusing similarity, did not filter out any work. So it's an entirely different circumstance. One more point on that. I think the question there on the preliminary. Let's save it for the rebuttal. Save it for rebuttal. Thank you. All right. Mr. Cerullo. Thank you, Your Honors, and may it please the Court. I'd like to start where some of the questions were, which is on the reasoning and the relatively summary nature of the decision below. Because I think it's really important to understand that there is a lot of water under the bridge in this case that is not appealable, that in some cases has already been appealed, and that is the settled law of the case as the Court finds it. So the question for this Court is whether the application of the order here, which purports to be an application of an existing preliminary injunction to these third-generation figurines is, although it is just on its face, an application of the preliminary injunction. Is it so wrong, so unreasonable that it's a modification? The preliminary injunction reads that including any figurine or image that is substantially similar to the minifigure copyrights are likely to be confused with the minifigure trademarks. So the preliminary injunction applies to anything that is substantially similar to the LEGO copyright and the LEGO figurine, correct? Correct. All right. The fact that they might be substantially similar to one of their earlier generations for which the district court enjoined them and they didn't contest it, that's not the test, is it? The test is what the preliminary injunction says, isn't it? It is, but I think I'd like to provide a little gloss on that because there was a preliminary – There's always gloss. There is. There was a preliminary injunction hearing, and it was appealed to the Federal Circuit. So just to go through these figurines, we reproduced the image at page 34 of our brief of that first infringing figurine compared to the LEGO minifigure copyright.  The court came in. There was a two-day evidentiary hearing on that. Yeah. All sorts of fact and expert witnesses testified, and the court held that that is – did a detailed analysis at which – and this is very important, I think. A lot of the arguments that are being raised now about separating the protectable from the unprotectable and the functional from the nonfunctional, the court addressed that in its preliminary injunction ruling at – I think it's at A113 to 115. But if Judge Thompson said, well, you know, they're not really that much different from the earlier generations but didn't compare them to the LEGO figurine, how would we know that they fell within the scope of the preliminary injunction since the preliminary injunction says similar to the minifigurine copyrights and the minifigurine trademarks? Right. All I'm saying, Your Honor – Right. So it's conceivable that something might be similar to something that was prohibited but something might not be similar to that for which the original prohibited mid-level or middle one isn't. I mean, isn't it? I mean, sooner or later it kind of dilutes out, doesn't it? It's conceivable, Your Honor, but I think it's – and this is the point I'm trying to make. You have a preliminary injunction ruling. You have the Federal Circuit's opinion affirming the preliminary injunction ruling. Right. Which then – so that's at page 34. I'm perfectly – I would be perfectly comfortable if I had the benefit of the judge's thinking about what he was looking at and comparing it to, but I don't. The judge had simply said – simply said, well, my original ruling was comparing the minicopyrights – the figurines to the minicopyrights and the minifigure trademarks, and I once again employ that standard and I find the third generation equally fall within the prohibitions of the preliminary injunction. Right. Now, he could have also given us the benefit of reasons, but I suppose at least we then know at least he was using the standard that had originally been employed, right? So it's true there are no reasons. I think because it was the third time around and there was contempt, there was a preliminary injunction, but I think another – No, I understand that. That's why it's messy. It is. It is messy. But let me ask you this. If he had said, I compared this not to the original figurine, minifigurine, but I've now compared it to the second generation zero figurine and I find them to be substantially similar. And since the original – the second generation zero figurine fell within the preliminary injunction, therefore, the third generation also does. That would be a modification of the preliminary injunction, would it not? I think it could potentially be if that had been the reasoning. It would be a new standard, wouldn't it? It would be different than the standard, but just to get this out. Would it or would it not be a new standard? I think that would not be the appropriate analysis to take. Okay. The reason why I think – But we don't know what he did. I think we have a very good idea of what happened here. So we should make a well-educated guess. No, not a well-educated guess. We have a procedure, by the way, that allows this kind of situation to be remedied, which is under a case called Jacobson years ago. We could just remand, keep jurisdiction of the case, remand it to the district court for a simple finding, and take the case back with you having an opportunity to comment by letter brief on what his findings are. And then we have a complete record. There's no doubt that the Court has the power to do that. There's nothing wrong with that. There's – here's why I don't think it's necessary. I acknowledge the Court has discretion to do that if it wishes. The third-generation figurine was fully briefed. We came – we did not argue that, you know, just look at the second generation and compare it. That wasn't the argument. I know you didn't. Go ahead. The argument was we had our expert come back to do an analysis as between the third generation and the first generation. So all the – the issue was joined on exactly what the district court was supposed to do. Now, it's true that the district court's statement of reasons was brief and doesn't go into a lot of detail. But again – Did he modify or did he interpret the injunction? I would say – I would say he clearly interpreted and applied it to these third-generation figurines. And there's nothing unreasonable about that application. I think based on the Federal Circuit's decision – So you're saying we don't have jurisdiction? That is what I'm saying, yes, that this Court does not have jurisdiction because it does not – Well, it took me 40 pages in Tronics to figure out that we didn't have jurisdiction. But – but, you know, the problem is that – I suppose – I guess your view is that we're up to it. We could – we could decide whether this is a modification or not because the standard is well known. Yeah. We've got the testimony of the experts and we could go ahead and do the substantially similar analysis ourselves. Well, I think you could say that the district court's – the way it was briefed, the way it was argued, and the ruling shows in context that it was done and applied. If we were to conclude that on this record they're not substantially similar to the original Lego figurine, then the conclusion by the district court to include them within it would indeed be a modification of the preliminary injunction, would it not? I just want to make sure I understand the Court's question. If you were to conclude – with the expert testimony and the – we know what the standard is. The standard's a legal standard. It's kind of a mixed question law, in fact, to some degree. But if we went ahead and did it and concluded that they are not substantially similar – you know, I have a grandson who's a Lego expert. I don't intend to consult him as to whether he thinks these things are similar or not. I've attempted, but I didn't do it. But we're up – we know what the standard is. We can look at the record. I mean, it's nothing different than what he did, right? You could. And if we concluded that he was wrong, that they're not substantially similar, we would conclude that he had, therefore, modified the injunction. We'd, A, find we'd had jurisdiction, and B, we'd reverse, right? So that's what the Court – you could do that. And in Tronics, which Your Honor is very familiar with, the Court did that on a de novo standard. I don't think you should do that on a de novo standard here.  However, because this is – When we don't have any – we have no analysis of why they're similar. But you have the finding that it is subject to the original preliminary injunction. So the analysis should be whether that finding was unreasonable. If we follow the summary order, that – because we have an injunction in place already, and the question is do we have jurisdiction at this point or not. We don't have to do a full merits analysis. We just have to conclude that a finding that there's substantial similarity is unreasonable, right? That's exactly right. And the reason why unreasonableness should apply as opposed to the de novo standard in Tronics, in my view, is that substantial similarity under this Court's cases, this is how the Court has described substantial similarity. I'm citing a case. It's cited in our brief, Peter F. Gato, 602 F. 3rd, 57. One of the most difficult questions in copyright law. That's a quote. The question of substantial similarity typically presents an extremely close question of fact and traditionally reserves for the trier effect. So very different than whether there's a derivative bankruptcy claim. So more argument for a Jacobson remand to finally get a factual record so that there are factual conclusions as to what these similarities are. Again, this Court has discretion to do a Jacobson remand. I'm not disputing that. I'd like to just take one more crack at convincing Your Honor that it's not necessary here. Well, you're telling us – I mean, either we say, oh, well, it's kind of close, but we still have to do the substantially similar thing, or we send it back and we have a district court judge make the findings of fact that are necessary. And if he makes findings of fact that don't add up to substantial similarity, we've got something to look at. I mean, why would you want us to guess? I just don't think that the Court has to guess. Close enough? No, not close enough. Standard? No, I think you have to look at this in the light of the entire hearing that was conducted, in light of the law of the case, and it's quite clear that the Court applied the standard. You didn't – both of you – this is well-lawyered. I'm not complaining about the lawyering at all. This is well-lawyered. But three lines? With all due respect, Mr. Sirota, you deserve more than three lines. One last question from me and I'll stop hassling you. You still have in your complaint a patent claim? Yes. The complaint has not been – Are you on the record now waiving the patent claim? Well, let me just make – If you don't, we don't have jurisdiction. We said in our summary judgment papers that it's been resolved. No. It's resolved? Is it? Are you telling me that the claim is no longer before the Court? It's – the agreement – the technical agreement is to – that it will be dismissed at the end of the case. But I think it's de facto amended. So it's still in the case? I believe that the Court has jurisdiction because there was a – we haven't disputed jurisdiction because I think it was a de facto amendment when in the summary judgment papers we said we're no longer pressing that, we've confidentially resolved that, and it will be withdrawn at the conclusion of the case. You're both excellent lawyers. Why didn't you then – I mean, you anticipated it, but you didn't finish it off. You still have that claim in here. Somebody has a change of heart? Is it – I mean, is there an agreement? Is there a memorialization of your waiver? There is an agreement, yes. Why didn't you submit it to us? Well, there's a confidential settlement agreement. It's never been filed with the Court. But we did say in our summary judgment papers, and I think it was – So you didn't want us to know that we don't – that we do have jurisdiction. You just wanted us to take it on faith value in your mentioning of it in a footnote in your brief. Is that it? Well, we're not the appellant. I think it was laid out by the other side, and we did not – Well, it's your claim, isn't it? Our patent claim? Yeah. I mean, we're not pressing the patent claim. It's going to be withdrawn. So I'll ask you one more time. Are you waiving your patent claim in front of us? Yeah. The patent claim is no longer in place.  If – Are you withdrawing it? Yes. All right. Fair enough. It's withdrawn. All right. Mr. Posner, you have two minutes on the model. Thank you. And LEGO did concede in its brief that it is withdrawing the patent claim. That's the word that it used from the brief. So I would just start briefly with the standard of review. Despite what counsel said, LEGO admits on page 26 of its brief that this is a de novo review case under Enright Tronics, and it clearly is because the district court was interpreting language that is tied to a legal standard. That's the Tronics. It's factual. It is different than the definition of a derivative claim in Tronics. This question, you have expert testimony, right? It's a mixed question of law and fact, isn't it? Part of it might be, but the question of whether the district court applied the correct standard, the meaning of substantial similarity, that's the legal question. That's what Nihon and Silverman teach us. When substantial similarity is used in an injunction, those are given legal meanings, and that's what the court was called upon the district court to interpret. You think that summary judgment, that summary order then is wrong because they clearly don't believe they did not apply de novo review. They determined whether or not it was unreasonable for the court to conclude. Well, Tronics was not a summary order. In Diageo, we do. I don't know that it was wrong on the facts of that. Tronics was clearly a straight-up law issue. What was the meaning of a derivative claim within the bankruptcy estate, whether it was a direct claim against the estate or whether it was a separate claim that was only personalized between the creditor and the debtor? It was a legal issue. We had to spend a lot of time and effort to figure out what the legal meaning was. I think Judge Bianco is right. This seems to me to be a mixed question of law and fact. This is so squishy. I mean, you know, substantially similar of the fit and feel. If I may, that I think is the secondary question. The main point I want to emphasize here, I think this court has all the power and information it needs to decide this issue. If there is a remand, the critical issue for us is that it's sent back down with guidance that the district court is to apply this court's more discerning observer test and to filter out unprotectable elements. Because LEGO has not identified, they have not engaged on that test, nor has the district court. That would be the legal error, and that's the main point we make. Had the district court properly applied that test, there's no question it applies because it's undisputed that the minifigure has both unprotectable and protectable elements. Decades of authority from this court saying that circumstance, the more discerning observer test applies. The district court did not do that, and had it done it, he could not have found in favor of LEGO, and there's no dispute about that. The district court, going back to my question, if the district court applies that exact test but comes out in their favor again, you're going to be right back here and argue that that's a modification of the injunction, aren't you? Well, we'd have to see what the district court's reasoning is, but that would be, I mean, yes, I think we might because in that case it would be an erroneous ruling. This is exactly what Judge Wesley in the footnote in Tronics feared, which is that there'd be piecemeal appeals. If you have ten versions of this, and the district court keeps saying it's substantially similar, it would have ten appeals piecemeal, one by one, and that's exactly in Tronics what Judge Wesley was concerned about in that footnote. We submit it won't happen. If the district court applies the more discerning observer test and filters out unprotectable features, they have a thin copyright to protect only against identical copies. We've shown you the figurines from the prior case that they admitted are non-infringing different expressions. Those figurines are far more similar to the minifigure than ours. That's undisputed, too. If the proper test applies, LEGO cannot prevail under the law, and that's all we're asking is that that test applies. All right. Thank you, both sides. Very well argued, gentlemen. Safe journey home. Thank you very much. Have a good day.